[No. A059552. First Dist., Div. One. Sept. 29, 1993.]

CALIFORNIA REAL ESTATE LOANS, INC., Plaintiff and Appellant, v. CLARK WALLACE as Real Estate Commissioner, etc., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts V and VI.

## COUNSEL

James H. Seymour for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Randall P. Borcherding, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**STRANKMAN, P. J.**—California Real Estate Loans, Inc. (CREL), a California corporation, appeals from a judgment denying a petition for writ of mandate, in which it challenged the revocation of its real estate broker's license by the Real Estate Commissioner (the Commissioner). The revocation was based on a determination by the Commissioner that a civil judgment had been entered against CREL based on fraud, misrepresentation, or deceit within the meaning of Business and Professions Code section 10177.5.[1]

In that portion of this opinion certified for publication, we consider CREL's argument that the Commissioner's action violated section 10179, which in some circumstances requires "guilty knowledge" by a broker before the broker can be disciplined for the wrongful acts of its agents. We hold that section 10179 does not create an exception to the unconditional language of section 10177.5; therefore, a broker against whom a judgment has been obtained may be disciplined pursuant to section 10177.5 even if its

---

[1]All statutory references are to the Business and Professions Code unless otherwise indicated.

liability in that action was vicarious. We also hold that the three-year statute of limitations for an accusation based on section 10177.5 begins to run on the date of final judgment against the licensee.

## I. *Factual and Procedural Background*

In 1981 CREL was licensed as a corporate real estate broker and acted primarily as a residential real estate loan broker. Glen E. Russell was an officer and shareholder of CREL, as well as its employee; he was a licensed real estate salesperson. Russell was contacted by Judith Smith, a real estate salesperson employed by First Marin Realty, Inc. (First Marin), to arrange a second mortgage for the purchase of a home by her client, Steven Reiner. Despite Russell's assurances to Reiner that the loan would be approved and funded by the close of escrow, it was not. Eventually, when the loan was approved, the interest rate was higher than that quoted by Russell.

Reiner sued Russell, CREL, Smith, and First Marin for fraud and breach of contract. After a court trial, judgment was entered in favor of Reiner and against all four defendants; plaintiff was awarded general damages, punitive damages, the refund of the real estate loan commission paid CREL and Russell, and attorney fees. Division Three of this court vacated the fee award and remanded for an apportionment of the punitive damages, but otherwise affirmed the judgment. The remittitur was issued May 24, 1988.

The Department of Real Estate filed an accusation against Russell, CREL, Smith, and First Marin on December 12, 1989, alleging that cause for license suspension or revocation existed pursuant to section 10177.5. Smith and Russell stipulated to discipline without a hearing. An administrative hearing was held on the accusation against CREL and First Marin. The administrative law judge issued a proposed decision finding that the judgment against CREL clearly was based on fraud, misrepresentation, or deceit under section 10177.5; it revoked CREL's license with the right to apply for a restricted license pursuant to section 10156.5. The accusation against First Marin was dismissed.

The proposed decision was adopted as the decision of the Commissioner, except for one condition against CREL. The Commissioner granted CREL's request for reconsideration. Upon reconsideration, however, the Commissioner ordered that no good cause had been shown to modify or reduce the disciplinary action.

CREL petitioned for a writ of mandate directing the Commissioner to vacate his decision and dismiss the accusation. After examining the administrative record and considering the arguments and authorities submitted by

counsel for the parties, the court denied the petition, and judgment was entered against CREL. This appeal followed.

## II. *Standard of Review*

■ A trial court reviewing the administrative decision of the Commissioner to revoke the license of a real estate broker or salesperson must exercise its independent judgment on the evidence underlying that decision and determine whether the Commissioner's findings are supported by the weight of the evidence. (*Vaill* v. *Edmonds* (1991) 4 Cal.App.4th 247, 257-258 [6 Cal.Rptr.2d 1]; *Madrid* v. *Department of Real Estate* (1984) 152 Cal.App.3d 454, 458 [199 Cal.Rptr. 520]; see *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-147 [93 Cal.Rptr. 234, 481 P.2d 242].) The reviewing court then must determine whether the trial court's factual findings concerning the truth of the accusations or alleged violations are supported by substantial evidence. (*Vaill* v. *Edmonds, supra,* at p. 258; *Realty Projects, Inc.* v. *Smith* (1973) 32 Cal.App.3d 204, 213, fn. 13 [108 Cal.Rptr. 71].)

A different rule applies when the issue is the nature of the penalty imposed. A court will not disturb the decision of the Commissioner on the penalty unless the licensee demonstrates an abuse of discretion. Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306]; *Schmitt* v. *City of Rialto* (1985) 164 Cal.App.3d 494, 500-501 [210 Cal.Rptr. 788].)

## III. *"Guilty Knowledge" Requirement of Section 10179*

There are numerous statutory grounds upon which the Commissioner is permitted to discipline a licensee. (See §§ 10176, 10176.5, 10177, 10177.1, 10177.2, 10177.4, 10177.5, 10178; 2 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 4:46, pp. 312-323.) The accusation against CREL was based on section 10177.5, which states: "When a final judgment is obtained in a civil action against any real estate licensee upon grounds of fraud, misrepresentation, or deceit with reference to any transaction for which a license is required . . . , the commissioner may . . . suspend or revoke the license of such real estate licensee."

■ The Commissioner concluded that the underlying judgment against CREL clearly satisfied the requirements of section 10177.5. Although the

judgment itself did not mention fraud, misrepresentation, or deceit, the trial court's statement of decision in that action and this court's unpublished opinion affirming the judgment confirm the Commissioner's conclusion. The trial court found that Russell and CREL, as licensed loan brokers and agents, had a fiduciary duty to the plaintiff which they breached in several ways; it then listed instances of Russell's misrepresentation of, or failure to disclose, material facts, in reckless disregard of plaintiff's rights. When this court affirmed, it held that the evidence of "multiple instances of malfeasance" by Russell supported the finding that Russell and CREL breached their fiduciary duty.

Such a breach of fiduciary duty constitutes constructive fraud (see Civ. Code, § 1573; *Barrett* v. *Bank of America* (1986) 183 Cal.App.3d 1362, 1369 [229 Cal.Rptr. 16]), and CREL does not claim otherwise. Instead, CREL focuses on the apparent basis for its own liability under that judgment. Because both courts in that action described misconduct only by Russell, CREL reasons that its liability necessarily resulted from the doctrine of respondeat superior. ■ It is settled that for purposes of liability to third parties for torts, a real estate salesperson is the agent of the broker who employs him or her. The broker is liable as a matter of law for all damages caused to third persons by the tortious acts of the salesperson committed within the course and scope of employment. (2 Miller & Starr, Cal. Real Estate, *supra*, § 3:11, p. 72 and cases there cited; see, e.g., *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 173-174 [169 Cal.Rptr. 136]; *Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 201-203 [30 Cal.Rptr. 253].)[2]

■ CREL argues that a broker may not be disciplined under section 10177.5 when its liability in the underlying action was vicarious. CREL's argument is based on section 10179, which provides in pertinent part: "No violation of any of the provisions of this part . . . by any real estate salesman or employee of any licensed real estate broker shall cause the revocation or suspension of the license of the employer of the salesman or employee unless it appears upon a hearing by the commissioner that the

---

[2]The Legislature has recently reaffirmed that principle. It enacted section 10032, which provides in part that a broker and salesperson licensed under that broker may contract between themselves as independent contractors or as employer and employee, for purposes of their legal relationship with and obligations to each other. At the same time, in an uncodified expression of legislative intent, it declared, "This act shall not be interpreted or applied to affect the . . . holding in [Gipson] v. Davis Realty Co. [1963] 215 Cal.App.2d 190, that a real estate broker may be vicariously liable under the doctrine of respondeat superior for tortious acts of a salesperson licensed under the broker; and further, . . . that any provision in a contract which purports to change that relationship from that of an agent to independent contractor is invalid as being contrary to law for purposes of tort liability to third parties." (Stats. 1991, ch. 679, § 2.)

employer had guilty knowledge of such violation." CREL argues that since there was no evidence that it had "guilty knowledge" of Russell's misconduct, revocation of its license violated section 10179.[3] The Commissioner replies that CREL misconstrues the operation of sections 10177.5 and 10179.

Several principles are pertinent to our consideration of the relationship between sections 10177.5 and 10179. ■ The fundamental goal of statutory construction is to ascertain the intent of the Legislature to effectuate the purpose of the law. To determine that intent, we must look first to the statutory language itself, giving the words their usual and ordinary meaning. (*People* v. *Hull* (1991) 1 Cal.4th 266, 271 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) We are not authorized to insert qualifying provisions and exceptions which have not been included by the Legislature, and may not rewrite a statute to conform to an intention which does not appear in the statutory language. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].) Nevertheless, a statute should not be read in isolation; instead, statutes on the same subject must be construed together, to harmonize and give effect to each, if possible. (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 274, fn. 7 [118 Cal.Rptr. 249, 529 P.2d 1017].) ■ Finally, the contemporaneous administrative construction of statutes by the administrative agency charged with their enforcement and interpretation is entitled to great weight, unless clearly erroneous or unauthorized. (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

■ When an accusation is based on disciplinary charging statutes that condition discipline upon a wrongful act or omission by a licensee, the act or omission must be proved at an administrative hearing. But when an accusation is based on section 10177.5, the express language of the statute makes the judgment itself the operative fact upon which the disciplinary action is imposed, not the acts or omissions of the licensee which led to that judgment. Thus, if the elements of fraud have been proved in the civil action, collateral estoppel principles bar the licensee from attempting to relitigate those facts at the administrative proceeding. (*Richards* v. *Gordon* (1967) 254 Cal.App.2d 735, 737-741 [62 Cal.Rptr. 466]; see also *Deas* v. *Knapp* (1981) 29 Cal.3d 69, 78-79 [171 Cal.Rptr. 823, 623 P.2d 775].)

■ Emphasizing this fundamental difference between a section 10177.5 accusation and an accusation based on other disciplinary charging statutes,

---

[3]The Commissioner's decision states: "Russell was the only licensed person at CREL with knowledge of the Reiner loan at the time the loan application was being processed."

the Commissioner reasons that the "guilty knowledge" requirement of section 10179 is limited to charging statutes other than section 10177.5, such as sections 10176 and 10177. To illustrate, the Commissioner explains that if an accusation charged a salesperson employed by a broker with an act of misrepresentation under section 10176, subdivision (a), the broker could not be charged with misrepresentation based on the salesperson's conduct without proof of the broker's guilty knowledge. Absent that knowledge, the broker could be charged only with its own misconduct, such as failure to exercise reasonable supervision under section 10177, subdivision (h).

The words of sections 10177.5 and 10179 support the Commissioner's interpretation. Section 10177.5 is stated in absolute terms: "When a final judgment is obtained . . . against any real estate licensee . . . the commissioner may . . . suspend or revoke the license of such real estate licensee." The statute does not exempt judgments against a broker based on vicarious liability. Although statutes on similar subjects must be considered together, section 10179 cannot be read to limit or qualify section 10177.5. Section 10179 requires guilty knowledge by a broker before a "violation of any of the provisions of this part" by the broker's salesperson can cause revocation or suspension of the broker's license. The ordinary commonsense meaning of the term "violation" is a failure to comply with rules or requirements. An accusation based on section 10177.5 is based on the existence of a judgment against a licensee, not on a "violation" of the charging statutes.[4]

CREL does not analyze the statutory language and cites no authority or legislative history supporting its view that section 10179 creates an exception to the unconditional language of section 10177.5. CREL argues only that the purpose underlying statutes providing for discipline against licensees is to protect consumers and the public against incompetent and unethical brokers, and that revocation of its license does not fulfill that purpose, because it has done nothing wrong.

CREL's reasoning is not persuasive. One policy reason for applying the doctrine of respondeat superior in tort cases is to prevent recurrence of the tortious conduct. Imposing liability on the employer for the employee's tortious conduct creates a strong incentive for the employer to take preventive measures against like misconduct by employees in the future. (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208, 214 [285 Cal.Rptr. 99, 814

---

[4]Furthermore, even if we were to interpret the existence of a civil judgment as defined in section 10177.5 as a "violation" within the meaning of section 10179, an accusation under section 10177.5 must be based on a judgment against the licensee itself, not a judgment against the licensee's employee. CREL was disciplined properly under that section because a judgment was obtained against it.

P.2d 1341].) Similarly, when a civil judgment has been entered against a broker based on the malfeasance of its salesperson, the imposition of administrative discipline on the broker undoubtedly serves as a powerful incentive for the broker to guard vigilantly against misconduct by its salespersons in the future. Obviously, the public is protected by a sanction which has such results.

CREL has not established that the Commission's interpretation of these statutes is clearly erroneous or inconsistent with legislative intent.

## IV.  *Statute of Limitations*

Section 10101 provides in pertinent part, "The accusation . . . shall be filed *not later than three years from the occurrence of the alleged grounds for disciplinary action* unless the acts or omissions with which the licensee is charged involves fraud, misrepresentation or a false promise in which case the accusation shall be filed within one year after the date of discovery by the aggrieved party of the fraud . . . or within three years after the occurrence thereof, whichever is later . . . ." (Italics added.)

■ CREL acknowledges that the accusation in this case was filed within three years of the date the judgment against it became final. Nevertheless, CREL contends the accusation was not timely, reasoning that the event beginning the limitations period is the licensee's act of misconduct, not the date of final judgment. CREL relies primarily on a 1953 amendment to section 10177.5, but the argument is not persuasive, as it is based on an incomplete presentation of legislative history.

Before 1953, section 10177.5 specifically authorized license revocation whenever a final judgment was obtained in a civil action upon grounds of fraud, misrepresentation, or deceit, "at any time within three years subsequent to said judgment." The version of section 10176 then in effect authorized license revocation "at any time where the licensee within the immediately preceding three years . . . in performing . . . the acts within the scope of this chapter has been guilty of" several listed acts of misconduct, such as making a substantial misrepresentation. Section 10177 contained similar language, authorizing license revocation of a licensee "who within three years immediately preceding" committed any one of the listed acts of misconduct, such as procuring a real estate license by misrepresentation. (Stats. 1949, ch. 826, §§ 5, 6, 7, pp. 1570-1573.)

The Legislature amended these sections in 1953 by deleting each reference to a three-year period. At the same time, it enacted section 10101. As

originally introduced in Senate Bill No. 675 (1953 Reg. Sess.) section 10101 provided that the accusation was to be filed not later than three years from the occurrence of the "acts or omissions" with which the licensee was charged. The bill was amended March 26, 1953, to delete the narrow and specific reference to "acts or omissions" and substitute more broad terminology providing that the accusation must be filed "not later than three years from the occurrence of the grounds for revocation . . . ." (See 1 Sen. J. (1953 Reg. Sess.) pp. 229, 1339; Stats. 1953, ch. 762, §§ 1-4, pp. 2025-2027.) We agree with the Commissioner that this change indicates legislative intent to retain the date of judgment as the commencement of the limitations period for an accusation under section 10177.5.

As we have already discussed in the previous section, the ground for license revocation in this case was the final civil judgment against CREL, not the acts or omissions underlying that judgment. (See *Richards* v. *Gordon*, *supra*, 254 Cal.App.2d at p. 741.) The accusation was timely filed.

### V., VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### VII.  *Disposition*

The judgment is affirmed.

Stein, J., and Dossee, J., concurred.

A petition for a rehearing was denied October 29, 1993, and appellant's petition for review by the Supreme Court was denied December 30, 1993.

*See footnote, *ante*, page 1575.