[No. A074966. First Dist., Div. Three. Oct. 30, 1997.]

AMVEST MORTGAGE CORPORATION, Plaintiff and Appellant, v. JIM ANTT JR., as Commissioner, etc., Defendant and Respondent.

## COUNSEL

Michael M. Levine for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Jack Newman, Deputy Attorney General for Defendant and Respondent.

## OPINION

**PHELAN, P. J.**—Amvest Mortgage Corporation (Amvest) appeals an order denying its petition for administrative mandamus. The petition sought an order from the superior court requiring respondent, Jim Antt, Jr., as Commissioner of the Department of Real Estate (collectively, the Department), to set aside an order suspending the firm's corporate real estate broker's license for 30 days. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 1993, the Department filed an accusation against Amvest and its designated broker/officer, Thomas J. Kerrins, alleging several violations of laws and regulations governing the conduct of a mortgage loan broker. A hearing was held before an administrative law judge (ALJ) who issued a proposed decision finding Amvest, through Kerrins's negligence or failure to supervise Amvest employees,[1] committed the following unlawful acts: (1) the firm's trust account was short $1,136.09 (a deficiency the firm repaid); (2) Amvest did not follow required reconciliation practices for its trust accounts pursuant to California Code of Regulations, title 10, section 2831.2; (3) the two Amvest employees who were permitted to withdraw funds from the trust account were not licensed either as brokers or real estate salespersons, nor did Amvest maintain adequate fidelity bond coverage for these persons (Cal. Code Regs., tit. 10, § 2834); (4) Amvest did not supply all borrowers with the proper lending disclosure documents (Bus. & Prof.

---

[1] Prior to the date of this hearing, the Department settled the charges against Kerrins and he was not a party to the hearing.

Code, § 10240)[2]; and (5) Amvest was subject to a prior thirty-day suspension order which had been stayed on condition the firm refrain from committing further acts that would be cause for disciplinary action within one year of that prior order.

The ALJ concluded these violations warranted discipline under section 10177 subdivision (d), and ordered Amvest's corporate real estate broker's license suspended for two years, which suspension was stayed under the following conditions: (1) thirty-day actual suspension; (2) Amvest obey all laws and responsibilities applicable to a real estate licensee; and (3) it pay the reasonable cost of the Department's audit. The commissioner adopted the proposed decision and order.

Amvest's motion for reconsideration was denied, and it petitioned for a writ of administrative mandamus. Appellant challenged the findings and the suspension order on the following grounds: (1) the violations were not willful as required by section 10177, subdivision (d); and (2) because Kerrins had disassociated himself from the firm prior to the hearing, the last paragraph of section 10177 bars imposition of any sanctions against the firm.[3]

The superior court denied the writ petition, ruling that willfulness is not required by section 10177, subdivision (d), and Kerrins's disassociation from the firm did not prevent the Department from imposing these sanctions. This timely appeal followed.

## DISCUSSION

### Suspension Is Improper for the Current Violations

Amvest contends section 10177 prevents suspension because the broker/officer who had responsibility to ensure compliance with the law and regulations, Thomas Kerrins, was no longer associated with the firm. Amvest does not challenge the evidence finding it was vicariously responsible for these violations.

Because the right to continue one's trade or profession is fundamental, the trial court was required to exercise its independent judgment and determine whether the ALJ's findings are supported by the weight of the

[2]All untitled statutory references are to the Business and Professions Code.

[3]That paragraph reads: "The commissioner may not deny or suspend the license of a corporate real estate broker if the offending officer, director, or stockholder has been completely disassociated from any affiliation or ownership in the corporation." (Stats. 1988, ch. 521, § 2, p. 1956.)

evidence presented at the disciplinary hearing. (Code Civ. Proc., § 1094.5; *California Real Estate Loans, Inc.* v. *Wallace* (1993) 18 Cal.App.4th 1575, 1580 [23 Cal.Rptr.2d 462] *(Wallace)*; *Apollo Estates, Inc.* v. *Department of Real Estate* (1985) 174 Cal.App.3d 625, 634 [220 Cal.Rptr. 199]; 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 276, pp. 1077-1078.) On appeal from an order granting or denying an administrative mandamus petition, the appellate court gives the superior court's judgment the same effect as if a trial were held in that court. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914-916 [80 Cal.Rptr. 89, 458 P.2d 33]; 9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 379-380, pp. 428-432.)

Section 10177 provides in part: "The commissioner may suspend or revoke the license of any real estate licensee, . . . or may suspend or revoke the license of, . . . a corporate applicant if an *officer*, director, or person owning or controlling 10 percent or more of the corporation's stock has done, any of the following: [¶] . . . [¶] (d) Willfully disregarded or violated the Real Estate Law [or] regulations . . . ." (Italics added.) Subdivision (o) provides: "The commissioner may not deny or suspend the license of a corporate real estate broker if the offending officer, director, or stockholder has been completely disassociated from any affiliation or ownership in the corporation." The 1988 amendment to the statute added the first and last paragraphs quoted above.

### A. *Kerrins Was an Officer Under Section 10177.*

First we address the issue of whether Kerrins was a corporate officer of Amvest within the meaning of section 10177. Since the evidence was undisputed, the issue becomes a question of law. (See generally, *Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 951 [88 Cal.Rptr. 175, 471 P.2d 975] [where facts are undisputed, nature of employment relationship is question of law]; *David Kikkert & Associates, Inc.* v. *Shine* (1970) 6 Cal.App.3d 112, 116 [86 Cal.Rptr. 161].) The uncontroverted records provide substantial evidence that Kerrins, as the designated "broker/officer," was a corporate officer for purposes of the statute.

It is undisputed that at all pertinent times, Amvest operated as a corporate real estate broker only through and because of Kerrins's license. (§ 10211; Cal. Code Regs., tit. 10, § 2740.)[4] If there is no licensed officer, the corporation cannot perform licensed activities. (2 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 4:8, p. 211.)

---

[4]Section 10211 reads: "If the licensee is a corporation, the license issued to it entitles one officer thereof, on behalf of the corporation, to engage in the business of real estate broker without the payment of any further fee, such officer to be designated in the application of the corporation for a license. For each officer other than the officer so designated, through whom

The accusation alleged the violations resulted from Kerrins's negligent supervision of Amvest employees. Amvest does not contend otherwise. Throughout these proceedings, the Department referred to Kerrins as the company's designated broker/officer. Paragraph IV of the accusation alleged: ". . . Amvest was and is licensed as a real estate broker corporation *acting by and through respondent KERRIN [sic] as designated broker officer.*" (Italics added.) Paragraph XIV alleged Kerrins was the officer responsible for "the supervision and control of the activities conducted on behalf of the corporation by its officers and employees, and failed to so exercise reasonable supervision and control."

The license certification document prepared by the Department as part of its investigation and admitted into evidence as exhibit 2, reflects that Kerrins was Amvest's designated broker/officer from November 12, 1991, until April 8, 1994. In its own audit report, upon which the trust account violation is based, the Department identified Kerrins as the "designated officer" of Amvest, holding the corporate title of vice-president. He and owner/president Ronald James were identified as the only officers of the corporation. In his findings of fact, the ALJ specifically found Kerrins was the "broker officer of Amvest [who] was responsible for the supervision and control of Amvest's activities."

Given this undisputed evidence, the ALJ's conclusion that "the evidence also did not clearly show that Kerrins was a corporate officer or director . . ." is incomprehensible. Not only is this finding unsupported by the weight of the evidence, it is refuted by the relevant statutes. (§§ 10159, 10211.)[5] There was simply no evidence, nor is there any law, to support the ALJ's finding. Kerrins was an officer of the corporation within the meaning of section 10177.

### B. *Kerrins's Disassociation From Amvest Precludes Suspension.*

As we have noted, the final sentence of section 10177 reads: "The commissioner may not deny or suspend the license of a corporate real estate broker if the offending officer, director, or stockholder has been completely disassociated from any affiliation or ownership in the corporation." Amvest

---

it engages in the business of real estate broker, the appropriate original or renewal fee is to be paid in addition to the fee paid by the corporation."

California Code of Regulations, title 10, section 2740 reads: "No acts for which a real estate license is required may be performed for, or in the name of, a corporation when there is no officer of the corporation licensed under Section[s] 10158 or 10211."

[5]Section 10159 reads: "Each officer of a corporation through whom it is licensed to act as a real estate broker is, while so employed under such license, a licensed real estate broker, but licensed only to act as such for and on behalf of the corporation as an officer."

argues this provision precluded any suspension in this case because, at the time it was imposed, Kerrins no longer had any connection with Amvest. In spite of the straightforward language of the quoted sentence, the Department contends it really does not mean what it says. While the Department's interpretation is entitled to great weight unless clearly erroneous, we must decide the issue as a pure question of law. (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 850 [187 Cal.Rptr. 432, 654 P.2d 202]; *Wallace, supra,* 18 Cal.App.4th at p. 1582.) ▉ "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. . . . When ' "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' . . . The plain meaning of words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason.' " (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140], citations omitted.)

▉ The Department asserts the language should be interpreted to apply only in the limited circumstance when the corporation is innocent of any *independent* wrongdoing, e.g., the "corporate licensee ('Corporation A') which terminates its relationship with an officer . . . who violated the law while in the employ of a <u>different</u> broker, or violated the law in a transaction <u>unrelated</u> to Corporation A's business, is not to be disciplined by the Commissioner." (Original emphasis.) The Department relies on the Legislative Counsel's Digest to the bill (Sen. Bill No. 1891) which declared, inter alia: "Existing law specifies the grounds for the revocation or suspension . . . of any real estate licensee. [¶] This bill would authorize those actions to be taken against a corporate licensee . . . if an officer, director, or person owning more than 10% of the stock of the corporation has committed any of the prohibited acts, as specified." (Legis. Counsel's Dig., Sen. Bill No. 1891, 4 Stats. 1988 (Reg. Sess.) Summary Dig., p. 158.) The Legislative Counsel's Digest does little more than restate the wording of the amended statute. Merely restating the amended language does not demonstrate that the exception set forth in the final paragraph of the statute does not apply in this case.

The sentence in question could not be more clear. The argument that the meaning ascribed to it by Amvest is somehow repugnant to the purposes of the regulatory scheme is not convincing. We must presume the Legislature was fully aware that, by this sentence, it was permitting a corporation to avoid suspension of its corporate license for the unlawful acts of an officer if that person divested himself or herself of any connection with the corporation. This undoubtedly was a trade-off by which a corporation and its employees would be allowed to continue to operate under the license of another broker/officer which was in good standing. It is the type of compromise routinely made by the Legislature, and we have been presented with no compelling reason to subvert the Legislature's straightforward intent.

In addition to the absence of any supporting legislative history for its interpretation, the Department's position is also not supported by logic. The basic policy which supports the imposition of a suspension upon a corporate licensee for improper conduct of its officers is the doctrine of respondeat superior. (See *Wallace, supra,* 18 Cal.App.4th at pp. 1583-1584.) Thus, there must be a connection between improper conduct by an officer, director or shareholder and the corporate entity sought to be disciplined in order for responsibility to attach. If the last sentence of section 10177 is interpreted to apply only to the scenario the commissioner posits, it would render that language superfluous since, even without the exception, there could be no corporate responsibility under principles of respondeat superior. (See generally, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 115, pp. 109-110; 5 Witkin, *op. cit. supra,* Torts, § 37, p. 96.) We must presume the Legislature intended to accomplish something by adding the last sentence to section 10177. The interpretation which the Department suggests would essentially render it meaningless since vicarious responsibility could never attach under the circumstances the Department contends it was intended to reach, i.e., violations unrelated to the corporate entity.

The Department has staked out an interpretation which is unsupported by legislative history or logic. We reject it and read the plain and unambiguous provisions of the final sentence of section 10177, added in 1988, as declaring the Department may not suspend a corporation's real estate broker's license if the offending officer has completely disassociated himself or herself from the corporation at the time the suspension is imposed. That is this case.

### DISPOSITION

The judgment is reversed and remanded with directions to the superior court to issue a writ of mandate directing respondent to set aside its order suspending petitioner's corporate real estate broker's license.

Parrilli, J., and Walker, J., concurred.