Filed 7/21/14  Khan Development Co. v. Bral CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| KHAN DEVELOPMENT COMPANY, INC., | B248757 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC463434) |
| v. | |
| FRAYDOON BRAL, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Affirmed.

Alderlaw, Michael Alder, Jennifer P. Burkes; The Ehrlich Law Firm, Jeffrey Issac Ehrlich for Plaintiff and Appellant.

Sheppard Mullin Richter & Hampton, Sascha Henry, Jonathan D. Moss for Defendants and Respondents.

This is an appeal from a judgment in favor of defendants Fraydoon Bral ("Bral"), Los Angeles Fashion Center, L.P. ("LAFC") and AOBH Investments, LLC ("AOBH") and against plaintiff Khan Development, Inc. ("Khan"), following the granting of defendants' motion for summary judgment. The trial court ruled that Khan was not entitled to recover a real estate commission because it was not duly licensed by the Department of Real Estate. We concur in this conclusion, and so affirm the judgment.

SUMMARY OF THE FACTS AND PROCEDURAL HISTORY

LAFC was formed for the purpose of acquiring and developing real property located in Los Angeles (the "LA Face" project.) AOBH was the general partner of LAFC; Bral was AOBH's managing partner.

The concept of LA Face was to have a landmark building in the downtown Los Angeles area consisting of commercial condominiums for apparel manufacturers. There was a "built-in" demand for these condominiums, including from members of the Korean Apparel Manufacturers Association, a local trade organization, that had expressed an interest in a building of this type for its members.

Khan, a California corporation, was formed for the sole purpose of acting as exclusive sales agent for the LA Face commercial condominium project. Soon Young Choi is Khan's sole shareholder. Mr. Choi, who resides in South Korea, is also the Chief Executive Officer of Khan.

At the time of the events in question, Khan had two corporate officers: Mr. Choi and Hyung Cheoi Chu. Neither of these two individuals held a California real estate broker's license.

Khan and AOBH entered into a written marketing and sales agreement (the "Agreement") pursuant to which Khan would act as the broker and real estate consultant for AOBH with respect to LA Face. The Agreement was for a term of one year, beginning on July 3, 2003 and terminating on July 4, 2004. If the LA Face project encountered delays, the contract could be extended for a period of up to one additional year. Neither LAFC nor Bral were parties to the agreement.

2

Under the terms of the Agreement, Khan agreed to provide brokerage, sales, and marketing services relating to the condominium units at LA Face, including providing all necessary staff resources and marketing materials. In return, AOBH agreed to pay Khan two forms of compensation: a marketing fee and a commission equal to five and a quarter percent of the gross proceeds of the sale of each condominium unit, to be provided to Khan in the form of a credit towards the purchase of units of LA Face.

AOBH paid Khan $900,000 in marketing fees, but paid Khan no commission on the sales of the LA Face units.

One of the terms of the Agreement was that Khan (which at the time of execution of the agreement was not a licensed real estate broker) was to forthwith become a real estate broker duly licensed by the Department of Real Estate. Khan thereafter entered into an agreement with one Tai Cho ("Cho") to be its "real estate broker" and indicated on forms filed with the Department of Real Estate that he was the corporation's broker officer. Defendants presented evidence that Cho was neither an officer nor an employee of Khan, as is required by, respectively, section 10211 and California Code of Regulations, Title 10, Section 2740.

Pursuant to an oral agreement, Cho was to be paid $1,000 a month by Khan for the "use of his name" on Khan's real estate broker's license. Cho testified that in fact he had no involvement with the LA Face project, and never even visited the project. He stated that he did nothing to locate or solicit potential buyers; did not negotiate the sale of any units; did not supervise anyone from Khan in regard to the sales of the units; had no authority to bind Khan to any kind of agreement; and never signed any documents on behalf of Khan. Cho further stated that he did not know whether Khan held meetings, but if there were any, he did not attend them. He had no written agreement with Khan, and no role in its business.

Khan sued defendants for breach of their obligation to pay real estate brokerage commissions earned pursuant to the terms of the Agreement, which they alleged to be in excess of $4.5 million. Defendants moved for summary judgment, or in the alternative, summary adjudication. The trial court granted summary judgment on the basis that Khan

3

was not licensed to sell real estate, and was therefore barred from suing to recover brokerage fees pursuant to Business & Professions Code[1] section 10136.

Judgment was entered on April 8, 2013, and defendants timely filed their notice of appeal.

## STANDARD OF REVIEW

"On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. [Citation.] 'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards.' [Citation.] We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. [Citations.] In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. [Citations.]" (*Hutton v. Fidelity National Title Company* (2013) 213 Cal.App.4th 486, 493-494.)

---

[1] All code references in this opinion refer to the Business & Professions Code unless otherwise indicated.

4

DISCUSSION

Before a corporation may lawfully provide real estate brokerage services in California, it must obtain a broker's license from the Department of Real Estate and designate a corporate officer who himself or herself holds a valid license from the Department, as its real estate "broker officer." (§§ 10130; 10211.) The purpose of the real estate broker licensing requirements is to protect the public from incompetent or untrustworthy practitioners. (*Salazar v. Interland, Inc.* (2007) 152 Cal.App.4th 1031, 1036 [affirming grant of summary judgment on grounds that plaintiff, as unlicensed broker, could not recover commissions].) Because a corporate real estate broker's license is issued on the basis of the qualifications, experience and good character of the designated corporate officer, the designated person must be a duly licensed real estate broker, who must take an active role in the supervision and conduct of real estate-related acts performed by the corporation. (*Holley v. Crank* (9th Cir. 2004) 400 F.3d 667, 672-673; Miller & Starr, *California Real Estate* (3rd ed., 2013) Section 4:2.)

In order to deter unlicensed practitioners from acting as real estate brokers, our Legislature has enacted statutes prohibiting unlicensed persons from access to the courts for the purpose of recovering compensation. (§ 10136; *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 738 ["The Legislature selected the specific means to protect the public and has expressed its intention in section 10136"].) Section 10136 embodies the principles long ago expounded by our Supreme Court in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 607: "[I]t has been repeatedly declared in this state that 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for violation thereof is illegal and void, and no action may be brought to enforce such contract.' [Citations.] . . ."

In support of their summary judgment motion, defendants presented evidence that Khan was not a duly licensed real estate broker because Cho, the person designated Khan's broker officer on its real estate broker's license, did not in fact perform that

5

function for the company.[2] This evidence consisted of Cho's deposition testimony to the effect that he did not work as a broker for Khan, either by finding or soliciting buyers, negotiating sales, or supervising those employees of Khan who engaged in those activities. Rather, Cho testified that his sole function under his agreement with Khan was to be named as the company's broker officer on the papers filed with the Department of Real Estate. He was not retained to perform any brokerage services for Khan which required a license.

Khan countered the deposition testimony of Khan's president, Choi, who said that Cho reviewed all of the documents in connection with the purchase and sale of LA face units. When challenged on how he knew this, Choi stated that he reviewed the reports from unidentified Khan employees. In their reply, defendants objected to this testimony based on hearsay, lack of foundation and lack of personal knowledge. The court sustained the objection on the latter ground.

The trial court concluded that the evidence presented by defendants established that Cho "was not actually an officer of Khan who performed real estate brokerage services only on Khan's behalf, but instead was merely paid by Khan for the use of Cho's license and name and as the designated officer." Consequently, the court further found that Khan "performed real estate brokerage services without an actual officer who was a licensed broker performing actual supervision as required by statute." Said the court: "[S]uch a sham arrangement meant that Khan was not conducting real estate brokerage services legally because the lack of an actively supervising officer circumvented the entire statutory scheme regarding corporate real estate brokers." The court concluded that Khan could not plead and prove, as required by section 10136, that it was a duly licensed real estate broker at the time the cause of action arose. Defendants were therefore entitled to summary judgment.

---

[2]     Defendants argued below, and repeat in their brief on appeal, that Cho was not an officer of Khan, and thus could not be lawfully designated its broker officer. For the reasons states in *Amvest Mortgage Corp. v. Antt* (1997) 58 Cal.App.4th 1239, we find this contention unpersuasive.

Khan contends on appeal that since its corporate broker's license designated Cho as Khan's broker officer, and Cho was in fact a licensed real estate broker, Khan held a valid real estate broker's license during the period in question, in full satisfaction of the requirements of section 10136. Khan is mistaken.

The mere appearance of Cho's name on Khan's corporate broker license did not render Khan "duly licensed" as required by section 10136. "The word 'duly' means, in a proper way, or regularly, or according to law." (*Robertson v. Perkins* (1889) 129 U.S. 233, 236, 9 S.Ct. 279, 280, 32 L.Ed. 686.) "Black's Law Dictionary defines 'duly' as '[i]n due or proper form or manner; according to legal requirements . . . properly . . . according to law in both form and substance.' (Black's Law Dict. (6th ed. 1990) p. 501, col. 2.)" (*Truck Ins. Exchange v. Superior Court* (1998) 67 Cal.App.4th 142, 147-148.) Similarly, Ballentine's Legal Dictionary and Thesarus (1995) at page 201 states: "When used before any word implying action, 'duly' means that the act was done properly, regularly and according to law." As the trial court found, the undisputed evidence[3] established that Cho did not perform the functions of a broker officer on Khan's behalf. Consequently, Khan was not duly licensed to sell real estate.

Khan also contends that since the responsibility to supervise a corporate broker's activities falls on the designated broker/officer and not the corporation (§ 10159.2), Cho's failure to supervise cannot in any way impact the validity of Khan's broker's license and its right to collect commissions. However, the uncontroverted evidence presented to the court was that Cho's sole obligation under his oral agreement with Khan was to lend his name to the corporation in order for Khan to procure a corporate real estate broker's license. There was no evidence that Khan intended to employ and compensate Cho to oversee its sales staff and be responsible for all sales activities at LA Face, the very activities required of a corporate licensee's broker officer.

---

[3]     The trial court properly disregarded Choi's statement that Cho supervised Khan's sales staff. Choi resided in Korea and received updates on the progress of the project through third parties. He therefore had no personal knowledge of Cho's involvement with Khan's LA Face sales staff.

In this regard, we find instructive the case of *Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374 ("*Buzgheia*"), which dealt with a situation similar to that presented here, except that the license at issue was a contractor's license rather than a real estate broker's license. The issue in that case was whether a party could attack a license valid on its face by proving that the licensing requirements were not in fact met.

In *Buzgheia*, the plaintiff/contractor held no license personally during his work on the construction jobs at issue, but did business as Tripoli Construction Company ("Tripoli") which held a license by virtue of its employment of a "responsible managing employee" or "RME." The developer defendants took the position that the RME was not a bona fide employee, did virtually no work on the developer's projects, and therefore Tripoli (and hence the plaintiff) was not "duly licensed." Regulations of the Contractors' State License Board required that the RME be permanently employed by the corporate licensee and actively engaged in the operation of the contracting business. (Cal. Code Regs., tit. 16, § 823, subd. (a).) "'"Direct supervision and control" includes any one or any combination of the following activities, supervising construction, managing construction activities by making technical and administrative decisions, checking jobs for proper workmanship, or direction supervision on construction job sites.' (*Id.* at subd. (b).)" (*Buzgheia, supra,* 60 Cal.App.4th at p. 381.)

The plaintiff in *Buzgheia* made the same argument as does Khan in this case: While there is a statutory civil remedy to suspend or revoke the license, a party "should [not] be able to go behind the fact of licensure to defeat a contractor's claim based on defective *exercise* of the license." (*Buzgheia, supra,* 60 Cal.App.4th at p. 385.)

The *Buzgheia* court began its analysis by reviewing the rationale behind the licensing requirements and the disablement of a non-licensed person from suing for compensation. Quoting the Supreme Court in *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, the *Buzgheia* court stated: "'The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. . . . The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite

8

skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. Section 7031 advances this purpose of withholding judicial aid from those who seek compensation for unlicensed contract work. The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay. Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor. 'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. . . .' (Original italics, citations omitted.)" (*Buzgheia, supra,* 60 Cal.App.4th at p. 380.)

The court then addressed the plaintiff's contention that a license valid on its face could not be attacked by the defendants in order to avoid payment for the services the plaintiff had already rendered. The court rejected the contention, agreeing with the defendants' argument that "'[e]vasion and deception in obtaining and maintaining a contractor's license in violation of the licensing law should not be sanctioned.'" (*Ibid.*) Consequently, it ruled that "a party in a civil action [may] attack a contractor's license by going behind the fact of the license and proving that a required RME is a 'sham.'" (*Id.* at p. 385.) The court found support for its ruling in "abundant, long-standing, case law," including *G.E. Hetrick & Associate, Inc. v. Summit Construction & Maintenance Co.* (1992) 11 Cal.App.4th 318, 328, *Rushing v. Powell* (1976) 61 Cal.App.3d 597, 605-607, *Weeks v. Merritt Bldg. & Constr. Co.* (1974) 39 Cal.App.3d 520, 524, and *Famous Builders, Inc. v. Bolin* (1968) 264 Cal.App.2d 37, 40-41.

Like *Buzgheia,* the uncontroverted evidence presented in this case showed that Khan's real estate broker's license was a sham. Cho, a licensed California real estate broker, was hired by Khan at a pay rate of $1,000 per month to lend his name to Khan's corporate real estate brokerage application and license. He was not an employee of the corporation as represented on the application, and he had no duties or responsibilities

with Khan.  He certainly was not supervising Khan's real estate operations.  Because the license was a sham, Khan was acting outside of the license.  Khan's position that the court cannot "go behind" the license to test its validity is without merit.

The granting of the motion for summary judgment by the trial court on the above-stated grounds was thus correct.  There were no material issues of fact in dispute and Khan was barred by California law from recovering the real estate commissions which it sought.

## DISPOSITION

The judgment is affirmed.  Defendants are to recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


We concur:


MOSK, ACTING P.J.


KRIEGLER, J.

---

[*]     Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.