[No. B073089. Second Dist., Div. Two. Aug. 16, 1994.]

GOVERNING BOARD OF ABC UNIFIED SCHOOL DISTRICT,
Plaintiff and Respondent, v.
KENNETH HAAR, Defendant and Appellant.

**COUNSEL**

Lawrence Rosenzweig for Defendant and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, James Baca and Karen T. Meyers for Plaintiff and Respondent.

Abby J. Liebman, Colleen Fahey, Virginia Weisz, Greines, Martin, Stein, & Richland and Barbara W. Ravitz as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**NOTT, J.**—Appellant Kenneth Haar appeals from a judgment entered after the trial court granted a petition for writ of administrative mandamus filed by respondent the Governing Board of the ABC Unified School District (District). The California Women's Law Center, Alliance for Children's Rights, and Public Counsel join in the appeal as amici curiae. We affirm.

### CONTENTIONS

Appellant contends that (1) the trial court erred in overruling appellant's demurrer, (2) the trial court erred by substituting its judgment for that of the Commission on Professional Competence (the Commission), and (3) the *"Morrison"* factors did not support termination.

### FACTS

On February 12, 1992, the District suspended appellant, a 26-year certificated, tenured music teacher of middle school students. It initiated dismissal proceedings against him on the grounds that he engaged in immoral conduct by sexually harassing his female students. Pursuant to Education Code section 44944,[1] appellant requested a hearing before the Commission to determine whether the suspension and dismissal were justified. Eighteen charges formed the basis for the claim of immoral conduct. During the hearing, charges 6 and 7 were deleted.

On June 15, 1992, the Commission ruled that appellant had not engaged in immoral conduct under section 44932 and ordered reinstatement and backpay. The decision cited findings stating that the District had failed to prove charges 1, 2, 4, 5, 9, 10, 12, 16, or 17. The decision also stated that all or parts of charges 3, 8, 11, 13, 14, 15, and 18 were true.

The District filed a petition for writ of administrative mandamus in superior court on September 15, 1992. The trial court granted the writ and

---

[1]All subsequent code section references shall be to the Education Code unless otherwise indicated.

reversed the decision of the Commission. The trial court found that the Commission's findings with respect to charges 3, 4, 13, and 14 were not supported by the weight of the evidence and that the findings relating to charges 15 and 18 supported appellant's dismissal. The trial court overruled a demurrer filed by appellant who urged that the petition had been filed after the expiration of the jurisdictional deadline and found that appellant had engaged in immoral conduct by sexually harassing female students.

This appeal follows.

## DISCUSSION

### I. The Trial Court Properly Overruled Appellant's Demurrer

■ Appellant first urges that the trial court erred in overruling its demurrer. In his demurrer, he argued that the Commission does not have the power of reconsideration and therefore respondent's petition was untimely under Government Code section 11523 which requires the petition to be filed within 30 days after the last date on which reconsideration can be ordered. We disagree.

■ "On appeal, the plaintiff bears the burden of demonstrating either that a demurrer was sustained erroneously or that sustaining a demurrer without leave to amend was an abuse of discretion. [Citation.]" (*Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 939-940 [175 Cal.Rptr. 81].) If there is a reasonable possibility that the plaintiff could cure the defective complaint by amendment, the trial court has abused its discretion and we must reverse. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1381 [272 Cal.Rptr. 387].) Although the plaintiff has the burden of showing how the complaint can be amended to state a cause of action, "such a showing need not be made in the trial court so long as it is made to the reviewing court." (*Id.* at p. 1386.)

The first step in determining the Legislature's intent in drafting a statute is to look to the plain language of the law. (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].) Where conflicting provisions exist, they " 'should be reconciled in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act. [Citation.] A construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless.' [Citations.]" (*Ibid.*)

■ Section 44944 empowers the Commission to conduct the dismissal hearing. It provides that the hearing shall be conducted in accordance with

chapter 5 (commencing with § 11500) of part 1 of division 3 of title 2 of the Government Code. That section states that the Commission "shall have all the power granted to an agency in that chapter, except that the right of discovery of the parties shall not be limited to those matters set forth in Section 11507.6 of the Government Code but shall include the rights and duties of any party in a civil action brought in a superior court. . . ." Since under Government Code section 11521, an agency has 30 days after the delivery or mailing of the decision to reconsider the decision, it appears that on its face, the statute allowing reconsideration applies to the Commission.

Appellant cites excerpts from code sections and case law in support of his proposition to the contrary. Appellant's reliance on section 44944, subdivision (c)(3), which states that "[t]he decision of the Commission on Professional Competence shall be deemed to be the final decision of the governing board" does not advance his argument. The term "final decision" refers to the school board, rather than to the Commission, as he implies, and even applied to the Commission does not reflect the intent of the Legislature to exclude the power of reconsideration. Appellant cites section 44944, subdivision (e), which requires the expenses of the lay members of the Commission to be paid as soon as the decision is issued, and section 44944, subdivision (c)(3) which states that the Commission does not have the power to dispose of the charge of dismissal by imposing probation or other alternative sanctions as examples of the Commission's transitory and rigid role. Those sections, however, appear to have little relevance to the question of reconsideration and to adopt appellant's argument that the Commission has no power to reconvene itself and thus no power of reconsideration seems unduly restrictive. We note that section 44944, subdivision (c)(3) allows for flexibility, giving to the governing board the power to adopt from time to time such rules and procedures to effectuate section 44944.

In support of his argument that the Commission has no power of reconsideration, appellant also cites dictum in *Sutter Union High School Dist.* v. *Superior Court* (1983) 140 Cal.App.3d 795, 798 [190 Cal.Rptr. 182] stating that the Commission is a transitory body. *Sutter* is not controlling here. *Sutter* concerned a motion to transfer venue based on the Commission's residence. The court held that the Commission "is a nominal party whose residence is immaterial for venue purposes" and that it is a "transitory body," created for the "limited purpose of conducting an individual hearing pursuant to . . . section 44944." (*Ibid.*) Appellant also cites language from *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 224 [246 Cal.Rptr. 733, 753 P.2d 689]] to the effect that the Commission has no role in the review process. Similarly, *Fontana* is inapplicable. There, the California Supreme Court held that the Commission is not an indispensable party to

a mandamus petition, citing *Sutter* and stating that the Commission has no role in the remainder of the review process. (*Ibid.*) We do not adopt the view that "the remainder of the review process" refers to a reconsideration order rather than a petition for mandamus. We conclude that neither case has any bearing on the issue of reconsideration.

Thus, the Commission had the right to order reconsideration under Government Code section 11521. A petition for administrative mandamus must be filed within 30 days after the last date on which reconsideration can be ordered. (Gov. Code, § 11523.) The time for filing the petition shall be extended until 30 days after the petitioner requests the record where he or she requests it within 10 days after the last day on which reconsideration can be ordered. (*Ibid.*) Here, the Commission issued and mailed its decision on June 15, 1992. On July 24, 1992, respondent requested the office of administrative hearings to prepare the record and the record was delivered to respondent on August 31, 1992. Respondent thus timely filed its petition on September 15, 1992.

## II. *Standard of Review*

Appellant urges that the trial court improperly substituted its judgment for that of the Commission, and that the proper standard is not one of independent review by the trial court. He urges that the Commission's findings must be given substantial weight "because the Commission is legislatively mandated to determine fitness to teach," relying on *San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 288 [185 Cal.Rptr. 203].

We disagree with his contentions for the following reasons. First, independent review is legislatively mandated. Section 44945 provides that on petition by either the governing board or the employee, the trial court shall exercise its independent review on the evidence in reviewing the decision of the Commission. Second, case law holds that in its review of the Commission's findings, the trial court exercises its independent judgment in assessing the evidence. (*West Valley-Mission Community College Dist.* v. *Concepcion* (1993) 16 Cal.App.4th 1766, 1775 [21 Cal.Rptr.2d 5]; *Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 978 [194 Cal.Rptr. 672].) Under the independent review standard, the trial court may weigh the credibility of witnesses. (*Pittsburg Unified School Dist.* v. *Commission on Professional Competence, supra,* at p. 977.)

Appellant also contends that *Guymon* v. *Board of Accountancy* (1976) 55 Cal.App.3d 1010 [128 Cal.Rptr. 137], which states that the trial court may

make its own determination regarding the credibility of witnesses, is distinguishable because that case contemplated the situation where a hearing officer, rather than the agency, views the witnesses, and hence the agency has no more exposure to witnesses than the reviewing court. The instant situation, he contends, is different, because the Commission does conduct the hearing. We disagree with appellant's contention for the following reasons. In rejecting reliance on administrative expertise, *Guymon* first noted that "California fixes responsibility for factual determination at the trial court rather than the administrative agency tier of the pyramid as a public policy." Also, the interpretation of testimony has long been held to be the province of the trial court. (*Rees* v. *Department of Motor Vehicles* (1970) 8 Cal.App.3d 746, 751 [87 Cal.Rptr. 456]; see also, Cal. Administrative Mandamus (Cont.Ed.Bar 1989) Court's Scope of Review Under CCP § 1094.5, § 4.157, p. 203 [the trial court may decide on issues of credibility regardless of the agency's opportunity to observe witnesses].) Finally, both *Pittsburg Unified School Dist.* v. *Commission on Professional Competence*, *supra*, 146 Cal.App.3d 964, 977 [194 Cal.Rptr. 672] and *Bassett Unified School Dist.* v. *Commission on Professional Competence* (1988) 201 Cal.App.3d 1444, 1451 [247 Cal.Rptr. 865], which affirmed independent review, involved commissions on professional competence as in the present case.

On appeal, the appellate court must sustain the trial court's findings if they are supported by substantial evidence. (*Pittsburg Unified School Dist.* v. *Commission on Professional Competence, supra*, 146 Cal.App.3d at p. 978.) " 'In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment. When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court. [Citation.]' [Citations.]" (*Ibid.*)

### III. *Substantial Evidence Supports the Trial Court's Decision*

At the hearing, the trial court focused on what it believed were the key findings 9, 10, 17 and 18.[2]

The record shows that a school administrator testified that he had been contacted by students from the P.A.L. (Peer Assistance Leader) student peer

---

[2]The remaining charges included allegations that appellant (1) rubbed Talishia G.'s leg with his leg; (2) rubbed Tieshia P.'s thigh in circles with his hand; (3) while dressed as Santa Claus, sat on Shaarnelle P.'s lap and rubbed his buttocks on her lap; (4) during 1990-1991, hugged Yvette S. tightly with his body; (5) during 1990-1991 commented to Yvette S. that she looked cute; (6) commented twice to Yvette S. that her skirt was too short; (7) commented to Yvette S. that we all should "go to dinner, drink, and get kinky"; (8) rubbed Talishia G.'s arm and shoulder with his hand; (9) touched Yvette S.'s hand while she was attempting to use

group who informed him that Talishia G. and Tieshia P. needed to share something important with him. They then related the charged incidents to him. During the subsequent investigation, the remaining four girls came forward with their allegations. He also stated that all of the girls were good students who were involved in school activities, and that none of them were discipline problems.

*Finding 9*:

 Charge 3 stated: "On or about December 20, 1991, you acted inappropriately with the students in your first period band class. More specifically, you dressed up as Santa Claus and indicated to the female students that you would give them an extra raffle ticket if they would sit on your lap, give you a hug and a kiss, and tell you what they wanted for Christmas."

The Commission's finding 9 concluded that the aforesaid conduct was not immoral, and that it was at worst unwise.

The record shows that Shaarnelle P. testified before the Commission that appellant stated he would give raffle tickets in exchange for sitting on his lap and kissing his cheek during the 1991 Christmas party. She also stated that Katie L. sat on his lap. Yvette S. testified that appellant said he would give raffle tickets to students who hugged him, gave him a kiss or sat on his lap. Katie L. also testified that appellant said he would give raffle tickets to those who would kiss him. Appellant stated that he may have jokingly told the kids to "kiss Santa on the side and get a ticket," but did not specifically remember telling kids to sit on his lap. A student witness stated that he saw a girl and a couple of guys sit on appellant's lap, but did not see any kissing going on. A parent witness and a teacher stated that they attended the party, but did not notice anything unusual going on.

Here, three children testified as to the statements appellant made. While the Commission found that the statements were made, it found that the conduct was at most, unwise. Appellant cites *San Dieguito Union High School Dist.* v. *Commission on Professional Competence, supra,* 135 Cal.App.3d 278, 288 for the proposition that the Commission's findings must be given substantial weight. While in *San Dieguito,* the trial court "[failed] to consider all the evidence and to establish a factual nexus between [the teacher's] absences and unfitness to teach," there is no such lapse between the evidence and the trial court's conclusion that the sexual harassment by appellant was immoral and sufficient to warrant dismissal. We

---

a clarinet; (10) rubbed Tieshia P.'s buttocks through an opening in the back of her chair; (11) leered at Yvette S., Talishia G., Mary L., and Tieshia P.; (12) told Tieshia P. that she looked beautiful.

cannot agree with appellant's conclusion that there was absolutely no evidence that he induced any female student to do anything. Resolving all evidentiary conflicts in favor of respondent, as we must, we conclude that the trial court's conclusion was supported by the weight of the evidence.

*Finding 10*:

■ Charge 4 stated: "On or about December 20, 1991, you offensively touched one of your students, Katie L. More specifically, you placed your hand on her thigh and you rubbed her thigh in circles with your hand." The Commission's finding 10 stated that the charged conduct was not established.

The record shows that Katie L. testified that appellant rubbed her thigh in circles, in a sexual manner, and that she thought it was wrong for him to do so. She stated that it made her feel "weird." Chaka J. testified that she saw appellant rubbing Katie L.'s thigh at the Christmas party. At the hearing, appellant denied rubbing Katie L.'s leg, and stated that it would be inappropriate for him to do so. However, he admitted that his arm may have brushed her leg.

Appellant also urges that his own testimony established only that he may have touched Katie L.'s leg. However, as previously noted, conflicting evidence will be resolved in favor of the respondent. Here, two children, including Katie L., testified to the thigh-rubbing incident. Viewing the record in the light most favorable to the ruling, as we must, we conclude that substantial evidence supported the trial court's finding that the conduct alleged in the charge was supported by the evidence and that the conduct supported appellant's termination.

*Finding 17*:

■ Charge 13 stated: "In or about September 1991 to on or about February 11, 1992, you offensively touched one of your students, Yvette S. More specifically, you have on numerous occasions hugged her tightly pressing your body against hers until she pushed you away." The Commission's finding 17 stated that appellant hugged Yvette S. with one arm, but did not establish that he pressed his body against hers until she pushed him away or that the conduct was immoral.

The record shows that Yvette S. testified that on 10 occasions, appellant put an arm around her and hugged her, pressing her to his body. She stated that she felt upset and uncomfortable because he was hugging her like a boy

hugs a girl. Each time, she would ask him to stop and would move away. Appellant's witness, John G., a student, testified that he heard Yvette say that somehow she was going to get Mr. Haar into trouble because she did not like him. Appellant testified that he may have tried to hug Yvette to boost her up because she was always so negative and unhappy.

Appellant contends that the trial court improperly credited Yvette's testimony in light of the Commission's apparent rejection of Yvette's testimony and the testimony by John G. that Yvette would try to get appellant into trouble. Once again, however, the trial court has the duty to determine credibility of witnesses, and our review of the record reveals substantial evidence to support its finding. That is, appellant admitted that he hugged Yvette, and the Commission so found. Also, even taking into consideration the testimony that Yvette may have held a grudge against appellant, the record shows that Yvette was not among the group of girls who first approached the P.A.L. with their complaints. The fact that Yvette came forward with her complaints only after the initiation of the investigation lends credence to her testimony. We conclude that substantial evidence supports the trial court's determination.

*Finding 18*:

█ Charge 14 stated: "In or about September 1991 to on or about February 11, 1992, you offensively touched one of your students, Yvette S. More specifically, you have on numerous occasions reached out and held her hand until she pulled away." Finding 18 stated that appellant touched Yvette's hand on several occasions from September 1991 to February 11, 1992, but the evidence did not establish that in September 1991, respondent held Yvette's hand on numerous occasions until she pulled away. The Commission found that it was not established that appellant's conduct was immoral.

The record shows that Yvette S. testified that appellant put his hand on top of hers and squeezed it until she moved it away. Appellant stated that he reached for her hand to draw her towards him when he needed to talk to her about the drum section. He testified that Yvette seemed "skittish" to him.

Appellant now urges that Yvette's actions do not lend credence to her testimony since she continued to visit his office. He also cites section 44807 for the proposition that a teacher is allowed the same degree of physical control over a student as a parent would legally exercise. First, a determination of Yvette's credibility falls within the province of the trial court. Second, appellant does not show us whether section 44807 was raised at the

trial level. Moreover, he neglects to include further language in that section which states: ". . . but which in no event shall exceed the amount of physical control reasonably necessary to maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning." The determination by the court that appellant's actions were immoral brings the touchings out of the scope of section 44807.

The trial court also cited findings 19 and 22 as support for its decision, stating that the evidence was not disputed as to those charges.

*Finding 19:*

Charge 15 stated: "In or about September 1992 to on or about February 11, 1992, you made inappropriate comments to one of your students, Yvette S. More specifically, you have on numerous occasions told her that she was cute and that she was your favorite." The record shows that Yvette testified that appellant told her she was cute, and that it made her feel uncomfortable because she felt appellant should not be looking at her. Also, she stated that he told her she was his favorite but that did not bother her. Appellant stated that he did call Yvette cute and that it would be an appropriate way to build up her self-esteem and make her smile. He denied calling her his favorite. He testified that he called only the cute ones cute, and that the term "cute" encompassed the entire student.

Appellant now urges that this court should reverse the trial court because appellant's explanation proves that there was no sexual connotation to his statements. Again, we cannot reweigh the evidence. The record shows substantial evidence of Yvette's discomfort with appellant's remarks about her "cuteness," and that Yvette was able to discern the difference between being called appellant's "favorite" and being called "cute." Although on its own, a comment that a student is cute is insufficient to comprise immoral conduct, the repeated and pervasive nature of appellant's conduct taken as a whole supports the trial court's determination.

*Finding 22:*

Charge 18 stated: "In or about the first semester of the 1991-92 school year, you caused one of your students, Mary L. to feel uncomfortable. More specifically, you told her "you look so cute, when you go to high school are you going to bring mace in case anyone tries to get you." Mary L. testified that she was upset because she did not want anything of that nature happening to her, and that appellant actually used the word "rape." Appellant admitted that he made the statement, but denied using the word "rape."

Appellant now urges that the trial court erred in attaching significance to appellant's comments but does not dispute that he made the statement alleged in the charge. Again, when taken by itself, the comment made by appellant would not be sufficient to uphold a charge of immorality, but when combined with the other sustained charges, the trial court's conclusion is supported by the evidence.

## IV. The "Morrison" Factors Supported Termination

■ Since the term "immoral conduct" is vague and broad, whether such conduct demonstrates unfitness to teach is measured against seven criteria: (1) the likelihood that the conduct may have adversely affected students or fellow teachers, (2) the degree of such adversity anticipated, (3) the proximity or remoteness in time of the conduct, (4) the type of teaching certificate held by the party involved, (5) the extenuating or aggravating circumstances, if any, surrounding the conduct, (6) the likelihood of the recurrence of the questioned conduct, and (7) the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 229 [82 Cal.Rptr. 175, 461 P.2d 375]; *Fontana Unified School Dist.* v. *Burman, supra,* 45 Cal.3d 208, 219-220.)

In applying the *Morrison* factors, the trial court stated that "[t]he conduct occurred in close proximity to the dismissal, namely the 1990-91 and the 1991-92 school years, there were extenuating and aggravating circumstance, i.e., physical harassment, there was no justifiable motivation, and there was a repetitive nature of the contact, continuing contact. [¶] The other factors: adverse effect on the students and the teachers. It was in this court's view immoral conduct and, accordingly, if you apply those *Morrison* factors to the record that is being reviewed by this court, there was sufficient evidence of same to support the moving party's decision. [¶] The findings, again, of the Commission are not supported by the weight of the evidence. Again, I've highlighted those findings that I think support that. Now, another example, I think findings 19 and [22] weren't even disputed, which again is support. [¶] Under *Morrison,* the moving party, in this court's view, established by a preponderance of the evidence that it had no choice but to insure the protection of its students by dismissing the real party in interest. [¶] The repeated acts of misconduct against students in the classroom clearly disturbed and upset the students. [¶] It was sexual harassment. It interfered with the teacher-student relationships and was sufficient for his dismissal."

Citing *Woodland Joint Unified School Dist.* v. *Commission on Professional Competence* (1992) 2 Cal.App.4th 1429 [4 Cal.Rptr.2d 227], appellant urges

that there was no evidence that appellant was unfit to teach. In *Woodland*, Zuber was dismissed on the grounds of "evident unfitness to teach." Appellant contends that determination was based on Zuber's unchangeable, temperamental defect, whereas here, there is no evidence that appellant here would ever engage in the censured conduct again. First, "evident unfitness" includes in its definition " 'unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies.' " (*Id.* at p. 1444.) Second, not all *Morrison* factors need be examined, only the pertinent ones. (*West Valley-Mission Community College Dist.* v. *Concepcion, supra,* 16 Cal.App.4th 1766, 1777.) Thus, even were we to view the trial court's emphasis of the repetitive, continuing nature of the conduct as a failure to address the possibility of recurrence, we would not invalidate its findings.

Appellant also urges that for the first time on appeal, respondent and amici curiae raise the applicability of section 212.5, subdivision (c) which defines sexual harassment as "unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature, made by someone from or in the work or educational setting . . . [which] has the purpose or effect of having a negative impact upon the individual's work or academic performance, or of creating an intimidating, hostile, or offensive work or educational environment." Although the record shows that the trial court raised the issue of sexual harassment, finding that "sexual harassment establishes sufficient cause for dismissal," appellant was dismissed under section 44944 on a charge of immoral conduct. We decline to accept respondent's and amici curiae's invitation to "flesh out the parameters of section 212.5."

Appellant also urges that this court must decide as a matter of law whether sexual harassment constitutes immoral conduct. Here, the court concluded that sexual harassment of an immoral character is sufficient to warrant dismissal. However, the determinative test of a charge of immoral or unprofessional conduct is fitness to teach (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 696 [139 Cal.Rptr. 700, 566 P.2d 602]), which is a question of ultimate fact (*id.* at p. 698, fn. 3.) A finding that the teacher committed a particular immoral act may, because of the *Morrison* factors, not be inconsistent with the finding of present fitness to teach. (*Id.* at pp. 691, 696-699; *West Valley-Mission Community College Dist.* v. *Concepcion, supra,* 16 Cal.App.4th at p. 1775.) In *Gardner* v. *Commission on Professional Competence* (1985) 164 Cal.App.3d 1035, 1037 [210 Cal.Rptr. 795], the court upheld immoral conduct and unfitness to teach charges where, among other things, the teacher was found to have invited a 15-year-old female student to lunch and an evening date, stroked a female student's open palm with his finger, suggesting he wanted to sleep with her, invited a 15-year-old to

attend a barbeque and beach party, stated at least 5 times that 1 of his female students had a "nice ass," flirted with female students, and questioned a female student about sleeping with her boyfriend and her use of contraceptives. Here, as previously discussed, we agree that the trial court properly applied the *Morrison* factors in finding that by appellant's conduct, i.e., the sexual harassment, he was unfit to teach.

We conclude that under the substantial evidence test, sufficient evidence exists to support the trial court's determination. While reasonable minds may differ as to whether appellant's conduct, even viewed in its entirety,[3] was sufficiently egregious to warrant the harsh treatment of dismissal versus progressive discipline, under a section 44939 immoral conduct charge, the governing board may immediately suspend and dismiss an employee.[4]

DISPOSITION

The judgment is affirmed.

Boren, P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 1994.

---

[3]We note that we have no record of appellant's past conduct.

[4]That section provides: "Upon the filing of written charges, duly signed and verified by the person filing them with the governing board of a school district, or upon a written statement of charges formulated by the governing board, charging a permanent employee of the district with immoral conduct, . . . the governing board may, if it deems such action necessary, immediately suspend the employee from his duties and give notice to him of his suspension, and that 30 days after service of the notice, he will be dismissed, unless he demands a hearing." By comparison, a charge of unprofessional conduct or incompetency under section 44938, subdivision (b)(1) or (2) requires the governing board to give the employee written notice of specific instances of the incompetency so that he or she may be furnished with an opportunity to correct his or her faults and overcome the grounds for the charge.