[No. D040579. Fourth Dist., Div. One. Nov. 10, 2003.]

SHIRLEY BRENNER, Plaintiff and Appellant, v.
CITY OF EL CAJON, Defendant and Respondent.

## COUNSEL

Salim Khawaja for Plaintiff and Appellant.

Daley & Heft, Robert W. Brockman, Jr., and Scott E. Patterson for Defendant and Respondent.

## OPINION

McDONALD, J.—Appellant Shirley Brenner was injured when struck by a car as she was walking across Chase Avenue in the City of El Cajon (City). Brenner sued City and, after demurrers were sustained to her original and first amended complaints, filed a second amended complaint alleging City was liable for a dangerous condition on public property. City's demurrer to Brenner's second amended complaint was sustained without leave to amend. Brenner asserts her second amended complaint adequately pleads facts showing a dangerous condition of public property; alternatively, she asserts it was an abuse of discretion to refuse her the opportunity to again amend her complaint.

I

### FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2000, Brenner was walking across Chase Avenue near its intersection with Estes Street in the City. While crossing the street, she was struck by a car and suffered significant injuries.

### A. *The Prior Iterations of the Complaint*

Brenner's original complaint as against City pleaded a single claim for negligence. She alleged that City negligently "designed, maintained, serviced, controlled, managed, monitored, created and operated" its streets; and City knew or should have known of the dangerous conditions on Chase Avenue, but failed to take steps to make the condition safe because it negligently did not "install safety devices to control the automobile traffic on Chase Avenue" or "take steps to prevent harm and injury to the public." City demurred to the

complaint, arguing a general negligence claim does not lie against a public entity. City also argued that, to the extent Brenner's complaint was construed as attempting to state a statutory claim under Government Code section 835[1] for a dangerous condition of public property based on City's not installing safety devices to control the automobile traffic on Chase Avenue, she failed to state facts sufficient to show a dangerous condition under section 830.4. The court sustained City's demurrer but granted Brenner leave to amend her complaint, cautioning that she should evaluate whether she could allege a viable claim under section 835.

Brenner then amended her complaint. Although she retitled her claim against City as "Dangerous Condition," her reformulated claim essentially realleged the allegations contained in her original negligence claim, adding only that City had "actual knowledge . . . of the dangerous condition, or changed conditions [that] made the road [a] dangerous condition, and that created a substantial risk or unreasonable risk" on Chase Avenue, and City had been in possession of that knowledge for "several years." City again demurred, arguing the complaint's only alleged dangerous condition of public property was the City's failure to install safety control devices for the street, which under section 830.4 is deemed not to be a dangerous condition.

Brenner opposed the demurrer, asserting the Chase/Estes intersection constituted a dangerous condition. Brenner noted there was a bus stop, a park and a convenience store at the intersection that resulted in high pedestrian traffic across the intersection; notwithstanding these facts, City did not install safety devices at the intersection. The court's tentative ruling was to sustain the demurrer and deny Brenner leave to amend because the only allegation of a dangerous condition was City's failure to install safety devices to control traffic at the intersection. After oral argument, the court sustained the demurrer but again gave Brenner leave to amend her complaint.

### B. *Second Amended Complaint*

Brenner's second amended complaint reasserted the set of allegations contained in her first amended complaint, but added City knew or should have known that, because of the attraction created by two bus stops, a park, a convenience store and a middle school at or near the Chase/Estes intersection, many pedestrians would be attracted to the area and would use the intersection to cross Chase Avenue. Brenner alleged that City was aware of the high number of pedestrians using the street and intersection, as well as the increased volume and speed of cars traveling on Chase Avenue and physical

---

[1] All statutory references are to the Government Code unless otherwise specified.

changes made to Chase Avenue[2] that posed risks to pedestrians; however, City did not take steps to make the intersection safe for pedestrians because it "failed to install traffic [regulatory] devices, traffic safety devices, traffic control devices, signs or traffic signs, or take any steps to manage, control, or reduce the automobile traffic flow or speed on Chase Avenue and/or . . . failed to take steps to prevent increased risk of harm and injury to the pedestrians . . . ."

City again demurred, noting Brenner still had not alleged any aspect or condition of the roadway itself that was dangerous and instead merely reiterated her claims that it was the *absence* of traffic safety or control devices that was the dangerous condition for which City was liable. City pointed out that under sections 830.4 and 830.8, as well as controlling case law (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187 [45 Cal.Rptr.2d 657] and *Paz v. State of California* (2000) 22 Cal.4th 550 [93 Cal.Rptr.2d 703, 994 P.2d 975]), City could not be held liable based solely on its failure to install safety devices. In opposition, Brenner argued the complaint adequately alleged a dangerous condition.[3]

The court sustained City's demurrer without leave to amend, and this appeal followed.

## II

## ANALYSIS

### A. *Governing Legal Principles*

A public entity is not liable for an injury arising out of the alleged act or omission of the entity except as provided by statute. (§ 815.) Section 835 is the sole statutory basis for a claim imposing liability on a public entity based on the condition of public property. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624].) Under

---

[2] Although the second amended complaint does not identify the nature of the physical or structural changes made to Chase Avenue that allegedly created the dangerous condition, it appears Brenner was referring to the fact Chase Avenue had been expanded several years earlier from a two-lane to a four-lane street.

[3] Brenner argued, in the alternative, that she should be given leave to amend her complaint because the court had recently ordered City to provide her with "as built" drawings of Chase Avenue showing the design of Chase Avenue after City expanded it from a two-lane to a four-lane road. However, there is no suggestion Brenner lacked the ability to examine Chase Avenue in its current four-lane configuration to assess whether it constituted a dangerous condition (because of impaired sightlines or some other construction or other flaw), and Brenner did not explain how receipt of these "as built" drawings would provide information not currently available to her.

section 835, a public entity may be liable if it creates an injury-producing dangerous condition on its property or if it fails to remedy a dangerous condition despite having notice and sufficient time to protect against it. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939 [67 Cal.Rptr.2d 454].)

To state a cause of action against a public entity under section 835, a plaintiff must plead: (1) a dangerous condition existed on the public property at the time of the injury; (2) the condition proximately caused the injury; (3) the condition created a reasonably foreseeable risk of the kind of injury sustained; and (4) the public entity had actual or constructive notice of the dangerous condition of the property in sufficient time to have taken measures to protect against it. (§ 835; *Vedder v. County of Imperial* (1974) 36 Cal.App.3d 654, 659 [111 Cal.Rptr. 728].) Section 830 defines a "[d]angerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Property is not "dangerous" within the meaning of the statutory scheme if the property is safe when used with due care and the risk of harm is created only when foreseeable users fail to exercise due care. (*Chowdhury v. City of Los Angeles, supra,* 38 Cal.App.4th 1187, 1196.)

For purposes of this case, it is also important to note the Legislature has expressly provided that "[a] condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." (§ 830.4.) Thus, the statutory scheme precludes a plaintiff from imposing liability on a public entity for creating a dangerous condition merely because it did not install the described traffic control devices. (*Chowdhury v. City of Los Angeles, supra,* 38 Cal.App.4th 1187, 1194–1195; accord, *Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 6–7 [190 Cal.Rptr. 694]; *Durham v. City of Los Angeles* (1979) 91 Cal.App.3d 567, 577 [154 Cal.Rptr. 243].)

Because this action was dismissed at the pleading stage, we outline the rules for pleading a claim against a governmental entity. ■ The limited and statutory nature of governmental liability mandates that claims against public entities be specifically pleaded. (*Susman v. City of Los Angeles* (1969) 269 Cal.App.2d 803, 809 [75 Cal.Rptr. 240].) Accordingly, a claim alleging a dangerous condition may not rely on generalized allegations (*Mittenhuber v. City of Redondo Beach, supra,* 142 Cal.App.3d at p. 5) but must specify in what manner the condition constituted a dangerous condition. (*People ex rel*

*Dept. of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480, 1485–1486 [7 Cal.Rptr.2d 498].) Although it is the general rule that it is a factual question whether a given set of facts and circumstances creates a dangerous condition, the issue may be resolved as a question of law if reasonable minds can come to but one conclusion. (§ 830.2; *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462 [72 Cal.Rptr.2d 464]; *Chowdhury v. City of Los Angeles, supra,* 38 Cal.App.4th 1187, 1194; *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704 [50 Cal.Rptr.2d 8].) Accordingly, if the facts pleaded by the plaintiff as a matter of law cannot support the finding of the existence of a dangerous condition within the meaning of the statutory scheme, a court may properly sustain a demurrer to the complaint. (*Mittenhuber, supra,* at pp. 5–12; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1133–1139 [119 Cal.Rptr.2d 709, 45 P.3d 1171] [trial court correctly sustained demurrer to complaint alleging dangerous condition because plaintiff was "unable to point to any defective aspect of the purely physical condition of the property"].)

B. *The Trial Court Sustained City's Demurrer to Second Amended Complaint*

Brenner's complaint, shorn of its generalized allegations and conclusions, cites three factors to support her claim of the dangerous condition of Chase Avenue. First, she alleges the expansion of Chase Avenue to a four-lane street resulted in an increase in the numbers of cars traveling the road and the speed at which they traveled. Second, she alleges an increased number of pedestrians cross Chase Avenue at or near the Chase/Estes intersection to patronize a park, two bus stops, a convenience store and a school in the area. Third, she alleges City did not install traffic regulation or safety devices to reduce the dangers to pedestrians posed by crossing Chase Avenue.

■ The first factor—that the volume and speed of vehicular traffic on Chase Avenue increased after it was widened—would not permit a finding of a dangerous condition, at least in the absence of some additional allegation that the physical characteristics of Chase Avenue created a substantial risk that a driver using due care while traveling along Chase Avenue would be unable to stop for pedestrians who were using due care while crossing at the Chase/Estes intersection. (See *Mittenhuber v. City of Redondo Beach, supra,* 142 Cal.App.3d at p. 7 ["[m]any of the streets and highways of this state are heavily used by motorists and bicyclists alike [but] the heavy use of any given paved road alone does not invoke application of" section 835]; accord, *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 483–485 [220 Cal.Rptr. 181].) The second amended complaint contains no allegation that Chase Avenue had blind corners, obscured sightlines, elevation variances, or any other unusual condition that made the road unsafe when used by

motorists and pedestrians exercising due care (*Mittenhuber, supra,* at p. 7; cf. *Plattner v. City of Riverside* (1999) 69 Cal.App.4th 1441, 1444–1446 [82 Cal.Rptr.2d 211]), and Brenner cites no authority that a dangerous condition exists absent such factors.[4]

█ The second factor—that there is a park, a convenience store, a school, and two bus stops at or near the Chase/Estes intersection and an increasing number of pedestrians cross Chase Avenue to patronize those facilities—does not make Chase Avenue a dangerous condition (*Mittenhuber v. City of Redondo Beach, supra,* 142 Cal.App.3d at p. 7 [heavy use of road does not equate to dangerous condition]), absent some additional allegation that there is some peculiar condition that makes it unsafe to cross Chase Avenue even when motorists and pedestrians are exercising due care.

In her reply brief on appeal, Brenner cites *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139 [132 Cal.Rptr.2d 341, 65 P.3d 807] (*Bonanno*) to assert that the location of a bus stop can constitute a dangerous condition of public property, and her second amended complaint alleged facts bringing her within *Bonanno*. However, we are convinced the unique facts and posture of *Bonanno* make it inapplicable here. In *Bonanno*, a vehicle struck a bus patron as the patron tried to reach a bus stop by crossing the street in a crosswalk at an uncontrolled intersection. The plaintiff sued the transit authority (CCCTA) and the county; all defendants except CCCTA settled, and plaintiff tried her case against CCCTA alone. The jury found in her favor, expressly finding that the bus stop was a dangerous condition of public property, and the Court of Appeal affirmed, holding that the location of the bus stop created a dangerous condition because the stop " 'beckoned pedestrian bus patrons to cross, and compelled cars to stop, at the feeder crosswalk without attendant traffic lights or pedestrian-activated signals.' " The Supreme Court granted review on CCCTA's petition, expressly "limiting review to the question 'whether the location of a bus stop may constitute a dangerous condition of public property under Government Code section 830 because bus patrons will be enticed to cross *a dangerous crosswalk* to reach the bus stop.' " (*Bonanno, supra,* at p. 146, italics added.) The majority,

---

[4] Brenner argues that under *Quelvog v. City of Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127], a public entity can be held liable for any condition that creates a danger of injury when the property is used in a reasonably foreseeable manner, and here a reasonably foreseeable risk of injury exists because drivers or pedestrians will not always use due care when traveling or crossing Chase Avenue. However, in *Quelvog*, the government affirmatively created a dangerous condition on property by encouraging drivers of "autoettes" to drive on sidewalks and by not enforcing the law against their use even after accidents had occurred, and the decedent (who was lawfully working on a ladder on the public sidewalk) was knocked down by a negligent driver of an autoette. (*Id.* at pp. 585–586, 590.) In contrast to *Quelvog*, Brenner's complaint contains no allegations that City did anything to encourage or facilitate any unusual or illegal use of Chase Avenue by drivers or pedestrians.

although eventually holding a bus stop could be a dangerous condition, predicated its analysis by expressly cautioning:

"Our decision here, we emphasize, *does not concern the question whether the crosswalk . . . was in fact an unsafe pedestrian route for crossing* [the road], or even the broader question whether painted crosswalks at uncontrolled intersections are more dangerous than those at signal-controlled intersections. As the County, which controlled the intersection, settled with plaintiff before trial, our decision does not in any respect address the liability of a city or county for maintenance of an unsafe crosswalk. To be sure, plaintiff introduced evidence—which the jury apparently found persuasive—showing the DeNormandie crossing was more dangerous than that at Morello, in order to establish that CCCTA should have moved its bus stop to Morello. But the sufficiency of that evidence is not before this court. Our order limiting review, quoted earlier in this opinion, *assumes the existence of a dangerous crosswalk*, posing only the question whether a *bus stop* may be deemed dangerous because bus users, to reach the stop, *must cross at that dangerous crosswalk.*" (*Bonanno, supra* 30 Cal.4th at pp. 146–147, first, second and fourth italics added; third italics in original.)

Thus, *Bonanno* assumed the crossing was a dangerous condition; the precise question here is *whether* the Chase Avenue crossing was a dangerous condition. Indeed, the issue decided in *Bonanno* is the *obverse* of the issue raised by Brenner: *Bonanno* addressed whether a bus stop was dangerous because of the routes necessarily traveled by its patrons, and in contrast Brenner's complaint addresses whether the route traveled by patrons was dangerous because of the bus stop. Because *Bonanno* did not address the issue raised by Brenner, and instead assumed the existence of a dangerous crosswalk, *Bonanno* does not illuminate the issues in this case.

█ Brenner's third factor for asserting Chase Avenue was a dangerous condition—that City did not install traffic regulation or safety devices to reduce the dangers to pedestrians posed by crossing Chase Avenue—has been legislatively excluded as a basis for finding a dangerous condition. (§ 830.4.) Brenner apparently seeks to avoid the impact of section 830.4 by citing *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755] and *Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466 [20 Cal.Rptr.2d 734] to argue a governmental entity can be liable when it has notice of a dangerous condition and does not install safeguards to protect the public against the danger. She asserts City, which had notice of the dangers presented by Chase Avenue, should have installed safeguards such as a median in the middle of the road or chains along the sidewalks to prevent pedestrians from crossing Chase Avenue and to channel them to safer crossing locations. However, neither *Ducey* nor *Constantinescu*

supports Brenner's claim. In *Ducey*, the court held that when the state has actual or constructive knowledge of a dangerous condition it can be held liable for failing to take reasonable steps to protect against the danger. (*Ducey*, at pp. 715–717.) However, *Ducey*'s holding was predicated on the foundational determination that a dangerous condition existed.[5] That foundational showing is absent here.

*Constantinescu* is also distinguishable. There, a school affirmatively created "traffic congestion that was particularly dangerous" by designating a small lot, originally designed for a different purpose, as a "pick up" area for school children where numerous automobiles converged at the same time to create "chaotic traffic conditions." (*Constantinescu v. Conejo Valley Unified School Dist., supra,* 16 Cal.App.4th at pp. 1473–1474.)[6] The court recognized that "[o]rdinarily, traffic congestion is not a dangerous condition invoking the application of section 835." (*Id.* at p. 1473.) However, *Constantinescu* held that, considering the special duty owed by a school district to protect the safety of the students attending school functions, the creation of a congested and chaotic loading zone permitted the finding of a dangerous condition, and therefore the school was obligated to take measures to safeguard against the dangerous condition. (*Id.* at pp. 1472–1476.) In contrast to *Constantinescu*, Brenner does not suggest City affirmatively created chaotic traffic conditions on Chase Avenue that posed any risks to pedestrians beyond the risks inherent in a sidewalk that abuts a road. Accordingly, *Constantinescu* does not aid Brenner.

We conclude the facts alleged by Brenner's second amended complaint do not support the finding of the existence of a dangerous condition within the meaning of the statutory scheme, and therefore the court properly sustained

---

[5] In *Ducey*, the issue was whether the state could be liable for not erecting a median barrier on a heavily traveled highway to prevent cross-median head-on accidents. However, *Ducey* examined at length the evidence supporting the conclusion that there was a substantial risk of injury from cross-median accidents even in the absence of negligent conduct by a motorist, and thus a dangerous condition within the meaning of section 835 *was present* in *Ducey*. (*Ducey v. Argo Sales Co., supra,* 25 Cal.3d at pp. 718–721.) Indeed, *Ducey* expressly noted the administrative criteria for erecting a median barrier on this stretch of road had been satisfied and its construction had been approved, but the state postponed construction for three years and the accident occurred during the hiatus. (*Id.* at pp. 712–714.)

[6] Specifically, a semicircular two-lane driveway, originally designed as a school bus loading area, was later designated as an area for parents to drive through and park to pick up waiting elementary school children. There was only enough room for six or seven cars at a time, and traffic would often be backed up onto the street. Hurried parents, jockeying for position, would often be forced to park at positions angled toward children who were waiting or walking along the sidewalk, and cars would be moving backward and forward on the inclined driveway trying to negotiate the loading zone while watching for running children and other cars. One parent described the conditions as "a zoo," and two experts opined it was "an accident waiting to happen." (*Constantinescu v. Conejo Valley Unified School Dist., supra,* 16 Cal.App.4th at pp. 1469–1470.)

City's demurrer to the second amended complaint. (*Mittenhuber v. City of Redondo Beach, supra,* 142 Cal.App.3d at pp. 5–12.)

## C. *Denial of Leave to File a Third Amended Complaint*

Brenner bears the burden of demonstrating that sustaining the demurrer without leave to amend was an abuse of discretion. (*Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 375 [33 Cal.Rptr.2d 744].) It is an abuse of discretion to deny a party leave to amend a complaint if there is a reasonable possibility the pleading can be cured by amendment. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) To demonstrate an abuse of discretion, the burden is on the plaintiff to show there is a reasonable possibility that the proposed amendment will cure the defect (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]) by showing in what manner the amendment to the complaint can be amended and how that amendment will change the legal effect of the pleadings. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

We note Brenner did not provide a proposed amendment to cure the faults of her second amended complaint and that omission alone supports the trial court's order denying leave to amend. (*Tiffany v. Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 226 [162 Cal.Rptr. 669].) Moreover, Brenner has not advanced on appeal any allegation she could now make, were further amendment to the complaint permitted, to cure the defects in her claims against City. (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636–637 [75 Cal.Rptr. 766, 451 P.2d 406].)

Because there exists no proposed pleading nor any identifiable allegation showing a reasonable possibility that an amended complaint will cure the defect (*Baum v. Duckor, Spradling & Metzger* (1999) 72 Cal.App.4th 54, 73 [84 Cal.Rptr.2d 703]), Brenner has not satisfied her burden of showing the trial court abused its discretion by sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting, P. J., and Aaron, J., concurred.