Filed 3/21/16  Curiel v. Dept. of Social Services CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| YVONNE CURIEL, | C074523 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 34201180000810CUWMGDS) |
| DEPARTMENT OF SOCIAL SERVICES, | |
| Defendant and Respondent. | |

Defendant Department of Social Services (the department) revoked the child day care license of plaintiff Yvonne Curiel[1] because it found, after an administrative hearing, that a child in her care was spanked and Curiel made false statements about it to an investigator.  Curiel has consistently claimed she never struck the child.  The trial court denied Curiel's petition for a writ of administrative mandamus after it concluded the findings and conclusions of the administrative law judge were supported by the weight of

---

[1] The administrative record spells Curiel's first name "Ivonne," consistent with her testimony at the administrative hearing.  We adopt the spelling used by the trial court.

1

the evidence. The trial court also found the department did not abuse its discretion by imposing the penalty of license revocation.

Curiel now contends (1) the trial court erred in considering a new theory -- that Curiel had fraudulently altered attendance logs -- which was not asserted at the administrative hearing; (2) the trial court erred in applying a "technical" rule of admissibility set forth in the Evidence Code, rather than a "broad" rule of admissibility set forth in the Administrative Procedure Act, to conclude that the administrative law judge did not err in excluding evidence of investigator bias; and (3) the trial court concluded Curiel's punishment was not excessive by incorrectly considering the new theory -- that Curiel had fraudulently altered attendance logs -- which was not asserted at the administrative hearing.

Finding no error or abuse of discretion, we will affirm the judgment.

BACKGROUND

The department licensed Curiel in 1997 to operate a family child care home in San Francisco. Health and Safety Code section 1596.885[2] provides that the department may revoke a child day care license for the following reasons, among others:

"(a) Violation by the licensee, registrant, or holder of a special permit of this act or of the rules and regulations promulgated under this act.

"(b) Aiding, abetting, or permitting the violating of this act or of the rules and regulations promulgated under this act.

"(c) Conduct which is inimical to the health, morals, welfare, or safety of either an individual in or receiving services from the facility or the people of this state." (§ 1596.885, subds. (a), (b), (c).)

---

[2] Undesignated statutory references are to the Health and Safety Code.

2

In August 2010 the department began the process of revoking Curiel's license by issuing a formal accusation. The department alleged that on or about September 21, 2009, Curiel violated section 1596.885, subdivisions (a) and (b), when a child in her care "incurred an injury, which appears as a handprint, while at the facility." The accusation cited implementing regulations requiring constant supervision of children and providing each child in a licensed facility a right to be free from corporal punishment. (Cal. Code Regs., tit. 22, §§ 102417 & 102423, subd. (a)(4).) The accusation further alleged that Curiel violated section 1596.885, subdivision (c) by making one or more false statements about the injury, including that the child's mother had asked Curiel for a $600 loan, that Curiel had given the parents two weeks' notice to terminate the child care arrangement, and that the child's father picked up the child on September 21, 2009.

An administrative law judge (ALJ) conducted an evidentiary hearing in January 2011 in connection with the department's accusation. The evidentiary hearing focused on an injury sustained by a two-year-old boy who had been in Curiel's care for seven weeks. It was undisputed that the child was spanked between the time the mother dropped him off at day care and the time she found a handprint mark on his buttocks that evening. A medical expert testified that it was impossible to tell what time the child had been hit or whether the handprint belonged to a man or a woman. Curiel denied ever spanking children and understood it was never permitted. Curiel contended the mother had been in a shelter because of abuse by the father and it was the father who picked up the child that day, so the father likely hit the child. The father denied ever striking any of his children.

The mother said she picked up the child on the day in question and took him by bus to a cousin's house, where she later changed his diaper and saw the red mark. The father said he had only picked up the child from Curiel's care once and that was several weeks before the day in question. He said he picked up the couple's other children on September 21 and took them to the cousin's house, arriving there before his wife. The

3

cousin corroborated that the father arrived with the older children 30 or 40 minutes before the mother arrived with the child who had been in Curiel's care.

The mother filed a complaint against Curiel and the department sent an investigator. The investigator testified that when she arrived at Curiel's home to begin the investigation, Curiel promptly said she knew what the investigation was about and handed over a handwritten letter. The letter was allegedly given to the victim's mother on September 21 to document that Curiel gave the mother two weeks' notice to find other care arrangements because the child cried a lot and because the mother had asked to borrow $600 that day, making Curiel uncomfortable. The letter also stated that the father had picked up the child that day and that Curiel made calls to the mother to find out why she did not return with the child but the calls went unanswered.

Although Curiel consistently claimed the father had picked up the child, the only corroborating evidence was a declaration from an unavailable witness saying he thought the mother's first verbal report to the referring agency identified the father as the one who picked up the child. The witness also acknowledged inconsistencies in his recollection and the evidence maintained by his employer. The ALJ gave his testimony no weight, and the trial court found no abuse of discretion regarding that evidentiary determination.

The investigator also interviewed the parents, who both said the mother picked up the child that day and had never asked to borrow money from Curiel. The parents denied that Curiel told them their child cried too much or would be terminated from child care and the mother also denied ever receiving mail or telephone calls from Curiel. The investigator did not call Curiel a liar but believed the evidence against Curiel was "more compelling" than the evidence provided by Curiel.

After hearing testimony from Curiel, the parents, relatives of the parents, the investigator and the doctor, the ALJ found that Curiel made uncorroborated and false statements about who picked up the child, about whether she gave a two-week notice to

4

the child's mother, and about whether the mother requested a $600 loan. The ALJ found the child's injury happened while the child was under Curiel's care and supervision.

Observing that Curiel had been a licensed child care provider for 14 years without incident and acknowledging evidence that she was "respected by the parents of children in her care and other providers in her community," the ALJ lamented that she showed "no signs of remorse, blames the father for the injury, and portrays the mother as a liar" and provided no evidence engendering confidence that similar behavior would not occur again. The ALJ concluded that the protection of the public compelled revocation of Curiel's license.

The department adopted the ALJ's proposed decision and it became final. After Curiel filed a petition for writ of administrative mandamus in the trial court, the trial court reviewed the administrative record under the independent judgment test, making its own findings and determinations. It found substantial evidence to support the department's decision and it denied Curiel's writ petition.

Additional facts are included in the discussion.

DISCUSSION

I

Curiel contends the trial court erred in considering a new theory -- that Curiel had fraudulently altered attendance logs -- which was not asserted at the administrative hearing.

In its opposition to Curiel's petition for writ of mandate, the department offered evidence from the administrative record that Curiel was not credible, mentioning the mother's denial that she signed an attendance record and suggesting that Curiel must have forged the signature. Curiel properly objected to the forgery reference in her reply, offering a quote from counsel for the department at the administrative hearing affirmatively stating that confusion about the attendance record was the fault of both parties and was not determinative of credibility. The trial court's tentative ruling

5

concluded the mother picked up the child that day. The trial court did not make a finding that anyone had forged attendance logs, but in a footnote it noted that the parties had discussed a "sign-out sheet." The trial court said that discussion was "not particularly relevant" because the mother and Curiel testified the mother signed the sheets a week or two in advance and Curiel testified she later entered the departure times.

At oral argument, Curiel urged the trial court to discard its tentative ruling against her and require a new hearing because, among other things, the attendance record evidence was raised for the first time in the trial court. The department countered that Curiel's objection was raised for the first time at oral argument. The trial court affirmed its tentative ruling without mentioning the attendance sheet evidence.

Curiel now suggests the trial court was "obviously influenced" in deciding who spanked the child by the department's argument that Curiel altered the child's attendance logs, but the record does not support her argument. She cites no supporting evidence, and in fact the trial court concluded the child was spanked while in Curiel's care because the mark was first discovered in the evening after day care and the only evidence the injury did not happen at Curiel's home was her own testimony that the father picked up the child that afternoon, testimony that was inconsistent with the testimony of several other witnesses. The trial court's only reference to the sign-out sheet was in the footnote in which the trial court explained why the discussion regarding the sign-out sheet was not particularly relevant. The trial court did not find that Curiel altered attendance logs.

Curiel's argument implies there was a lack of substantial evidence to support the trial court's conclusion that her testimony was not credible. Weighing the credibility of witnesses and making fact findings is part of a trial court's independent review of licensing revocation proceedings. (*Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 377.) The trial court applied the correct test and cited reasons for finding Curiel not credible. An appellate court reviewing a license revocation must sustain the trial court's findings if they are supported by substantial evidence and must resolve conflicts in favor

of the prevailing party. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52.) When the evidence is susceptible to more than one inference, we are prohibited from substituting our own deductions for those of the trial court. (*Ibid*.) An appellate court may reverse the denial of administrative mandamus if (a) no reasonable trier of fact could have considered the evidence reasonable, credible and of solid value; (b) the court's decision was based on an erroneous conclusion of law; or (c) the trial court failed to make a necessary factual determination. (*Id*. at pp. 52-53.) Curiel does not provide support for any of these grounds.

Even if we were to assume that the father had an opportunity to cause the child's injury, as Curiel insists, there was substantial evidence that Curiel lied about what happened that day. The trial court concluded that Curiel's account was "difficult to believe" for five reasons: (1) the mother allegedly had no response when told she would need to find new daycare, but then she asked Curiel, who she had known for only seven weeks, for $600 for a dance class; (2) the referring agency told Curiel the next day that the child would not be returning to her care because the mother was unhappy but Curiel never told the agency she had given the mother notice; (3) Curiel testified that she gave the mother notice three days before the loan request yet her letter said the reason for the notice was the loan request; (4) Curiel testified the letter was written the evening of the incident yet it mentions a subsequent call to the mother asking if she would be returning with the child; and (5) Curiel did not call her daughter to testify even though she said the daughter could corroborate her story.

A credibility determination was necessary in this case. Either Curiel told the truth and the parents lied or the parents told the truth and Curiel lied. As we have said, the trial court cited substantial evidence for disbelieving Curiel, all documented by references to the record, and none mentioning the attendance logs. Curiel refers in her brief to evidence in the record that could have supported a contrary conclusion, but it is not our

7

role to reweigh the evidence and draw new conclusions. There was substantial evidence to support the trial court's conclusion without regard to attendance logs.

II

Curiel next contends the trial court erred in applying a "technical" rule of admissibility set forth in the Evidence Code, rather than a "broad" rule of admissibility set forth in the Administrative Procedure Act, to conclude that the administrative law judge did not err in excluding evidence of investigator bias. She claims the error precluded her from showing that the department's investigator was biased and resulted in a denial of due process.

Curiel's counsel cross-examined the investigator at length about many details of the investigation, and in particular as to why the investigator believed the mother despite specifically-identified contradictions in the evidence and why the investigator had not thoroughly explored specified evidence favorable to Curiel. The following testimony and colloquy concluded the cross-examination:

"Q: Now, one other question: As far as departmental policy, is it departmental policy to tell prospective parents not to send a child to a particular day care?

"A: To other parents?

"Q: If I were calling the Department --

"A: Uh-huh.

"Q: -- and actually [the agency that referred the child to Curiel in this case], to be precise, and said, I'm new to the area and I'd like to find a day care --

"A: Yes.

"Q: -- Does the Department make any recommendations?

"A: No.

"Q: Does the Department ever tell prospective parents not to send them to a particular day care because they beat children at that day care?

"[Department counsel]: Objection, relevance.

8

"[ALJ]: What is the relevance of this?

"[Counsel for Curiel]: It's part of the bias argument about the Department and its investigation. They're still telling parents that children are being beat at the day care.

"[Witness interjects]: If a complaint --

"[ALJ]: Wait, wait, wait.

[¶] . . . [¶]

"[ALJ]: What's that have to do with the relevance of this investigation? That's sort of --

"[Counsel for Curiel]: Because I think [the] investigation was biased and the bias continues.

"[ALJ]: Well, I'm not sure it shows her bias.

"[Counsel for Curiel]: No, no. But . . . I will offer evidence as to what parents are being told today. And I think it -- and I think we all know it's a violation.

"[ALJ]: Well, I don't see the relevance of that, so I'll sustain the objection.

"[Counsel for Curiel]: I have nothing further. Thank you."

On redirect, counsel for the department asked the investigator whether she had ever told any parents not to send their children to Curiel because "they beat children" and the investigator responded unequivocally, "No." Curiel offered no other evidence of bias by the investigator or the department.

Curiel's writ petition asserted she had been denied a fair hearing because she was not allowed to establish that the investigator was "hostile and biased against her," but the trial court disagreed, pointing out that Curiel not only offered no evidence that the investigator told other parents not to send children to Curiel, she offered no evidence the investigator was biased at all. The trial court observed that the ALJ had broad discretion to limit cross-examination on collateral matters such as the actions of unidentified representatives of the department, especially since Curiel made no offer of proof about what information she expected to elicit in response to her question.

9

The trial court cited authority about offers of proof when cross-examination exceeds the scope of the direct examination in a civil or criminal trial, including *People v. Lavergne* (1971) 4 Cal.3d 735, 742, Evidence Code section 354, and *People v. Foss* (2007) 155 Cal.App.4th 113, 127.  Curiel now contends the evidentiary ruling was wrong because it was not based on the evidence rules set forth in the Administrative Procedure Act.  But the trial court's ruling was correct under both civil and administrative standards.

At an administrative hearing, each party has the right "to cross-examine opposing witnesses on any matter relevant to the issues even though the matter was not covered in the direct examination" and the right "to impeach any witness."  (Gov. Code § 11513, subd. (b).)  Relevant evidence may be admitted "if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions."  (Gov. Code § 11513, subd. (c).)  These provisions permit relevant evidence to be admitted more readily in an administrative hearing than at a civil trial, but they do not sanction the admission of evidence that is not relevant.  Moreover, an officer presiding at an administrative hearing has discretion to exclude even relevant evidence "if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time."  (Gov. Code § 11513, subd. (f).)

On appeal, we review a trial court's ruling on the admissibility of evidence in an administrative hearing for abuse of discretion.  (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1217.)  The trial court did not abuse its discretion when it agreed with the ALJ that questions about whether "the department" steered parents away from Curiel's care at the time of the hearing had no apparent relevance to whether the investigator was biased while interviewing witnesses many months earlier. (See *City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 782 [witnesses in administrative proceeding have no duty to respond to inquiries that cannot serve to prove

10

or disprove a point in contention].)  Curiel had the opportunity to cross-examine the witness and she was not denied a fair trial because the questioning on bias was limited.

III

Curiel further contends the trial court concluded her punishment was not excessive by incorrectly considering the new theory -- that Curiel had fraudulently altered attendance logs -- which was not asserted at the administrative hearing.  As we explained in Part I of this opinion, however, the trial court found the sign-out sheet discussion inconsequential.  Curiel's suggestion that the trial court improperly relied on it lacks merit.

"[T]he propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency and its decision may not be disturbed unless there has been a manifest abuse of discretion."  (*Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966.)  A reviewing court determines only whether the penalty was arbitrary, capricious or patently abusive.  (*Id*. at pp. 966-967.)  Reviewing courts are not free to substitute their discretion for that of an administrative agency concerning the degree of punishment.  (*Cal. Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1580.)

The only authority Curiel cites for a lesser punishment is the principle that license revocation is drastic and the principle that judicial discretion in the administration of penalties must be exercised "in conformity with law."  Curiel does not deny that section 1596.885, subdivision (c) authorizes the department to revoke a license for conduct "inimical to the health, morals, welfare, or safety of either an individual in or receiving services from the facility or the people of this state."  (§ 1596.885, subd. (c).)

Curiel suggested that the spanking was a minor offense, but the trial court disagreed, given that the spanking was administered to a two-year-old child in a manner that left a mark that was visible hours later.  In any event, the trial court observed that the license was revoked both because of the spanking and because Curiel lied about her

11

interaction with the child's parents. The trial court quoted with approval the ALJ's conclusion that the protection of the public compelled license revocation because Curiel was not remorseful and had provided "no evidence which would engender any confidence that this type of behavior would not occur again." The trial court found that the record supported these conclusions.

The evidence against Curiel was substantial and the penalty imposed was within the range of discretion accorded to the department for the protection of the public. We find no abuse of discretion.

DISPOSITION

The judgment is affirmed.

            /S/
Mauro, Acting P. J.

We concur:

    /S/
Murray, J.

    /S/
Hoch, J.

12